1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9   Kent and Elisa M. McIntosh, husband and     No. CV-11-1805-PHX-GMS
    wife,
                                                 **ORDER**
10                          Plaintiffs,

11  v.

12  IndyMac Bank, FSB; OneWest Bank,
    FSB,
13
                            Defendants.
14

15          Pending before the Court is Defendant OneWest Bank's Motion for Summary

16  Judgment. (Doc. 38.) For the reasons stated below, Defendant's motion is granted.

17                          **FACTUAL BACKGROUND**

18          On March 19, 2007, Plaintiffs Kent and Elisa McIntosh borrowed $265,000 from

19  IndyMac Bank ("IndyMac") to purchase real property (the "Property"). In connection

20  with this loan, Plaintiffs executed a Deed of Trust. The Deed of Trust designated

21  Mortgage Electronic Registration Systems, Inc. ("MERS") as its beneficiary.

22          In early 2010, Plaintiffs began missing monthly loan payments and making late

23  payments. They stopped making payments on their loan as of June 30, 2010. (Doc. 41, ¶

24  8 and Ex. A.) On September 29, 2010, MERS assigned its interest as beneficiary to

25  Defendant OneWest Bank ("OneWest") after OneWest acquired IndyMac's interest in

26  the Property. (Doc. 20, Ex. 4.) The trustee, Quality Loan Service Company, recorded a

27  Notice of Trustee's Sale on the same day. (Doc. 20, Ex. 3.) After that Notice but before

28  foreclosure, OneWest considered Plaintiffs for a loan modification under the federal

1    government's Home Affordable Modification Program ("HAMP"). (Doc. 39, ¶ 8.) On

2    December 14, 2010, Plaintiffs received a letter denying their modification request for

3    failing to provide appropriate documentation for review. (Doc. 43 at 3.) On January 3,

4    2011, the Property was sold via foreclosure to Fannie Mae. (Doc. 39, ¶ 13.) On January

5    7, 2011, a Trustee's Deed Upon Sale was recorded conveying Quality Loan's interest as

6    trustee to Fannie Mae. (Doc. 20, Ex. 6.) Also on January 7, an Assignment of Deed of

7    Trust was recorded assigning OneWest's interest in the Deed of Trust to Fannie Mae.

8    (Doc. 20, Ex. 5.)

9        Plaintiffs subsequently contacted Fannie Mae and OneWest to discuss rescission

10   of the foreclosure and to be considered again for a loan modification. (Doc. 43 at 3; Doc.

11   39 at ¶ 14.) OneWest communicated to Plaintiffs Fannie Mae's offer to rescind the

12   foreclosure upon the condition that Plaintiffs make a $5,000 good-faith payment towards

13   the balance of their loan. (Doc. 39, ¶ 9, 10.) On March 8, 2011, Fannie Mae agreed to

14   rescind the foreclosure. (*Id.*) Plaintiffs made the $5,000 payment on March 16 and

15   OneWest, as their loan servicer, applied it to their account on March 22. (*Id.*, ¶ 11.) After

16   this payment, Plaintiffs were offered a trial loan modification with the first payment due

17   on April 1, 2011. (*Id.*, ¶ 12.) They made all trial payments and were given a non-HAMP

18   loan modification. (*Id.*) The loan modification agreement was signed by Plaintiffs on

19   August 23, 2011. (*Id.*; Doc. 41, Ex. B.)  The non-HAMP loan modification apparently

20   remains in effect through today's date.

21       On July 22, 2011, Plaintiffs filed this Complaint in the Maricopa County Superior

22   Court alleging failure to record the cancellation of the trustee's sale, bad faith business

23   practices, negligence, quiet title, and slander of title. They contend that damages include

24   the $5,000 payment made to obtain the loan modification, $10,000 in attorney fees added

25   to the principal of the loan by OneWest, the loss of Mr. McIntosh's job due to stress of

26   the foreclosure, medical injuries for Mrs. McIntosh, the loss and enjoyment of the

27   community association facilities where their home is located, and general and special

28   damages. (Doc. 43 at 7.) On September 14, 2011, the action was removed to this Court.

1    OneWest moved to dismiss Plaintiffs' Complaint for failure to state a claim. (Doc. 9.)

2    IndyMac was dismissed as a party to this action. All counts against OneWest were

3    dismissed for failure to state valid claims except for the negligence claim against which

4    OneWest now brings its Motion for Summary Judgment. (Doc. 23.)

5    **DISCUSSION**

6    **I.    LEGAL STANDARD**

7    Summary judgment is appropriate if the evidence, viewed in the light most

8    favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to

9    any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

10    P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over

11    facts that might affect the outcome of the suit under the governing law will properly

12    preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

13    248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could

14    return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

15    1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving

16    party must show that the genuine factual issues "'can be resolved only by a finder of fact

17    *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural*

18    *Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)

19    (emphasis in original) (quoting *Anderson*, 477 U.S. at 250).

20    **II.    NEGLIGENCE**

21    In their remaining count, Plaintiffs allege that OneWest is liable to Plaintiffs for

22    negligence. (Doc. 13, Ex. A at ¶¶ 21–25.) Under Arizona law, negligence consists of four

23    elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2)

24    a breach by the defendant of that standard; (3) a causal connection between the

25    defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*,

26    214 Ariz. 141, 143, 150 P.3d 228, 230 (2007). Whether a duty of care exists is a matter of

27    law for the court to determine. *Id.* In order to determine whether a duty of care existed,

28    the court decides "whether the relationship of the parties was such that the defendant was

1  under an obligation to use some care to avoid or prevent injury to the plaintiff." 

2  *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (Ariz. 1985).

3  Courts in this District have generally held that lenders and loan servicers owe 

4  borrowers a non-contractual duty of care which could give rise to negligence claims. *See,* 

5  *e.g., Silving v. Wells Fargo Bank, N.A.*, 2011 WL 2669246, at *14 (D. Ariz. July 7, 2011) 

6  (rejecting the defendants' claim that "mortgage lenders do not generally have legal duties 

7  to borrowers from which negligence claims may arise"); *Escobar v. Wells Fargo Bank,* 

8  *N.A.*, 2011 WL 6794032, at *3 (D. Ariz. Nov. 9, 2011). *See also Wells Fargo Credit* 

9  *Corp. v. Smith*, 166 Ariz. 489, 803 P.2d 900 (App. 1990) (reversing trial court's grant of 

10  summary judgment on borrowers' negligence claim against lender). *But see Wilson v.* 

11  *GMAC Mortg., LLC*, 2011 WL 4101668, at *3–4 (D. Ariz. Sept. 14, 2011) ("Unless a 

12  special relationship arises from extensive involvement in a lender's business, a lender of 

13  money owes no duty of care to a borrower when the lender's participation in the loan is 

14  limited to a mere lender of money.") (internal quotations omitted).  A lender's duty of 

15  care includes the duty to correctly service a borrower's account and to disclose correct 

16  information. *See Narramore v. HSBC Bank USA*, 2010 WL 2732815, at *8 (D. Ariz. July 

17  7, 2010) (holding that lenders owe a duty to disclose to borrowers the correct amount of 

18  monthly payments due under their loan agreement); *Escobar*, 2011 WL 6794032, at *3 

19  ("[A]t least in some traditional lender-borrower relationships, a duty to disclose exists.").

20  Plaintiffs contend that as their lender and loan servicer, OneWest did not correctly 

21  service their loan account.  Although their Complaint makes no mention of it, Plaintiffs 

22  maintain in their responses to OneWest's interrogatories that OneWest instructed them to 

23  stop making payments on their loan after they filed for a HAMP loan modification and 

24  then OneWest foreclosed on their home for doing so. (Doc. 43 at 2-3.)[1] Plaintiffs allege 

25  

26  [1] In responding to OneWest's interrogatories Plaintiff's responded "[w]hen Plaintiffs filed for loan modification they were instructed (1) to stop making payments on 

27  their loan and (2) that they had to be behind in payments to qualify for a loan modification." (Doc. 38-2 at 36, no. 1.) In response to a different interrogatory, Plaintiffs 

28  again stated "Plaintiffs were told by One West Bank to default on their loan after they were told their loan modification application looked good to be approved." *Id* at no 5.

1

2

3

4

5

that, based on this advice they did go into default, and thus suffered the foreclosure of their home which otherwise would not have occurred.  OneWest denies that it ever advised Plaintiffs to go into default and state that it is against their policy to do so. (Doc. 41, ¶¶ 5, 6.) Plaintiffs have not provided any admissible evidence as to whom at OneWest advised them to default and when.

6

7

8

9

10

11

12

13

14

15

16

17

18

Moreover, as OneWest notes, it is not contested that Plaintiffs first filed for their HAMP loan modification on November 22, 2010.  Plaintiffs had been late on their loan payments beginning nine months earlier and had made no loan payments at all after June 30, 2010--several months before they filed their request for a HAMP loan modification. (Doc. 44 at 4-5.) Thus it is uncontested that Plaintiffs were already in default prior to filing their HAMP loan modification.  While OneWest denies that they ever advised Plaintiffs at any time to go into default, even if they did so after Plaintiffs had filed their request for a HAMP loan modification, Plaintiffs had already been in default for a number of months at that time.  (Doc. 41, ¶ 8 and Ex. A.) Thus, their loan default was not caused by any advice they received from OneWest after they filed their HAMP loan modification.  Plaintiffs do not dispute that non-judicial foreclosure is an appropriate remedy for default on the loan obligation. Based on the state of the current record, there are no material issues of fact on this point.

19

20

21

22

23

24

25

26

27

28

Plaintiffs also claim that OneWest was negligent by failing to grant them a HAMP loan modification after they had submitted the necessary documentation and by foreclosing on their home while their application was under consideration. (Doc. 43 at 7.) There is no private right of action against lenders who do not provide loan modifications or foreclose while considering a modification when a borrower is in default *See, e.g., Berenice Thoreau de la Salle v. America's Wholesale Lender*, 2010 WL 1507317, at *1 (E.D.Cal. April 14, 2010); *Puzz v. Chase Home Fin., LLC*, 763 F. Supp. 2d 1116, 1122 (D. Ariz. 2011). Plaintiffs admit that OneWest and Fannie Mae did not have a legal duty to consider Plaintiffs for a loan modification. (Doc. 38-2, Requests for Admission, ¶ 15, 17.) Moreover, Plaintiffs received a letter denying their request for a HAMP loan

1   modification on December 14, 2010, a few weeks prior to the foreclosure on January 3,

2   2011. (Doc. 38-2, Response to Interrogatories at 37-38.) Accordingly, Plaintiffs cannot

3   base their claim of negligence on OneWest's refusal to grant them a HAMP loan

4   modification.

5        Plaintiffs assert that after the foreclosure, OneWest demanded a $5,000 payment

6   even though OneWest had a pre-existing duty to reinstate their home loan. (Doc. 13, Ex.

7   A, ¶ 24; Doc. 18 at 4.) OneWest did not have a duty to rescind the valid foreclosure and

8   Plaintiffs have admitted as much. (Doc. 38-2, Requests for Admission, ¶ 15.) Fannie Mae

9   purchased the Property from OneWest on January 3, 2011. (*Id.*, *¶* 11.) As a result of the

10  trustee's sale, OneWest was no longer Plaintiffs' lender but remained as the loan servicer

11  on their account. (Doc. 20, Ex. 5.) After the foreclosure, Plaintiffs approached OneWest

12  for a possible loan modification. (*Id.*,¶ 14.) In March 2011, Fannie Mae agreed to rescind

13  the trustee's sale in exchange for a good-faith payment of $5000 to be applied to their

14  loan. (*Id.*, *¶* 16.) That rescission agreement was between Plaintiffs and Fannie Mae, not

15  OneWest. (*Id.*; Doc. 41, *¶* 12.) Furthermore, Plaintiffs have not provided evidence that

16  the agreement was not valid.  OneWest fulfilled its duty as the loan servicer by disclosing

17  the rescission offer to Plaintiffs to which Plaintiffs agreed. (Doc. 38-2, Requests for

18  Admission at *¶* 18.) Then, OneWest duly applied the $5,000 payment to Plaintiffs' loan

19  account on March 22, 2011. (Doc. 41, Ex. A at 8.) There is no genuine issue of material

20  fact relating to OneWest's handling of the rescission agreement. Consequently, a

21  reasonable jury could not find that OneWest breached its duty of care as a lender or as a

22  loan servicer to Plaintiffs.

23                                    **CONCLUSION**

24       OneWest owed duties to properly service Plaintiffs' loan account and to disclose

25  correct information to them. However, Plaintiffs have not produced evidence from which

26  a reasonable jury could return a verdict in their favor for breach of those duties.

27  Accordingly, summary judgment is proper on Plaintiffs' remaining negligence claim

28  against OneWest.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS ORDERED AND ADJUDGED** by way of this Court, having **granted** Defendant's Motion for Summary Judgment (Doc. 38), Plaintiff's Complaint is dismissed with prejudice. Plaintiff shall take nothing.

Dated this 10th day of January, 2013.

_____

/G. Murray Snow

United States District Judge